**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

EDWARD ALAN HAVICE                                                  PLAINTIFF

v.                                              CIVIL ACTION NO. 1:24-cv-87-TBM-MTP

COMMISSIONER OF SOCIAL
SECURITY                                                            DEFENDANT

<u>**ORDER**</u>

Edward Havice appeals the final decision of the Commissioner of Social Security denying his claim for disability insurance benefits. He claims that he is physically disabled but does not dispute the findings of the Administrative Law Judge ("ALJ") or the Magistrate Judge related to his physical disabilities. Instead, his sole complaint before this Court pertains to his alleged mental impairments caused by chronic pain.

Havice admits that his psychological problems are not the "main reason" he is disabled. Even so, he argues that the ALJ erred in failing to assess the non-severe mental limitations associated with his chronic pain—namely his lack of focus—in calculating his residual functional capacity ("RFC"). This Court disagrees, as the ALJ appropriately considered the limiting effects of Havice's mental impairments associated with his chronic pain. As discussed in the ALJ's report, Havice's medical records reflect that he did not have issues with understanding, remembering, or performing daily tasks such as driving, or managing finances and medication. Significantly, his medical records do not provide for any psychological basis as to why he is unable to work. In fact, there is nothing in Havice's medical records, or the record as a whole, to indicate that Havice's RFC would have been different if the ALJ had listed chronic pain as a separate impairment at step

two. Thus, Havice's Objections are overruled, the Report and Recommendation is adopted as the opinion of this Court, and this case is dismissed.

## I. BACKGROUND AND PROCEDURAL HISTORY

Edward Havice applied for disability insurance benefits alleging a disability onset date of January 14, 2022, based on spinal stenosis of lumbar spine, right hip replacement with pain, left hip pain with replacement required, left shoulder replacement, right shoulder pain and degenerative arthritis, right shoulder subluxation, right long thoracic nerve damage and pain, cystitis of the bladder with pain, cervical spinal stenosis, and depression. The Social Security Administration denied Havice's claim on initial review and on reconsideration. An ALJ then held a hearing at which Havice testified about his conditions, and on January 12, 2024, upon finding that Havice did not meet his burden in proving his disability by establishing a physical or mental impairment lasting at least twelve months that prevents him from engaging in any substantial gainful activity, the ALJ issued a decision denying Havice disability benefits under the Social Security Act.[1]

In the ALJ's decision, he first found that Havice had not engaged in substantial gainful activity since the alleged onset date of January 14, 2022, which allowed the ALJ to move to the next step. In the second step, the ALJ found that Havice had a non-severe mental impairment of major depressive disorder, but that Havice had severe impairments of dysfunction of the bilateral

---

[1] An ALJ uses a sequential, five-step approach to determine whether a claimant is disabled, and if at any step the ALJ finds that the claimant is disabled as determined by the standards in the regulation, the inquiry ends. This analysis requires the ALJ to determine whether: (1) the claimant is currently engaged in substantial gainful activity, (2) she has a severe impairment, (3) the impairment meets the severity of an impairment enumerated in the relevant regulations, (4) it prevents the claimant from performing past relevant work, and (5) whether it prevents her from doing any relevant work. 20 C.F.R. § 404.1520; *Keel v. Saul*, 986 F.3 551, 555 (5th Cir. 2021) (citing *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018)). If the claimant survives the first four stages, the burden shifts to the Commissioner on the fifth step to prove the claimant's employability. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001).

shoulders; status post bilateral hip replacements; degenerative disc disease of the lumbar, thoracic, and cervical spine; aortic insufficiency due to bicuspid valve; and obesity. Because the ALJ found severe impairments, the ALJ moved onto the third step and concluded that Havice did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.[2]

Since the ALJ found in step three that Havice was not impaired enough to be considered disabled under the listed impairments, he moved on to step four and determined that Havice had the residual functional capacity ("RFC") to "perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can rarely climb ladders, ropes, and scaffolds. He can occasionally climb ramps or stairs. He can occasionally balance, stoop, crouch, kneel, and crawl. He can rarely use both hands and arms for overhead reaching."[3] [6], p. 22. The ALJ did not include any mental limitations related to Havice's chronic pain. Based on this RFC, at the fourth step, the ALJ found that the "claimant is capable of performing past relevant work as a Program Director DOT 189.117-030 (sedentary, SVP 8). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565)." *Id.*, p. 29. Having found at step four that Havice is not disabled within the meaning of the Social Security Act, the ALJ did not continue to step five. The Appeals Council denied review rendering the ALJ's decision

---

[2] In a general sense, "the listed impairments," are a long list of impairments broken down into groups that relate to various body systems from which an individual can suffer. If the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listing and meets the duration requirement, the claimant is disabled, and the inquiry must end. 20 C.F.R. § 404.1520(d). If the impairments do not meet the criteria of a listing, the analysis proceeds to the next step. [8], p. 30; 20 C.F.R. § 404.1520(e).

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a); 20 C.F.R. § 416.967(a).

the final decision of the Commissioner. Havice then appealed the Commissioner's decision to this Court.

On appeal to this Court, Havice argued that the ALJ failed to discuss his chronic pain syndrome or account for the total limiting effects of his impairments. Magistrate Judge Parker reviewed the Commissioner's decision and recommends that it be affirmed. The Report and Recommendation explains that "even if Plaintiff was diagnosed with chronic pain syndrome and the ALJ erred by failing to list it as an impairment, the analysis does not end. If an ALJ proceeds past step two, as the ALJ did here, courts consider whether the error was harmless." [11], p. 6. After conducting a harmless error analysis, the Report and Recommendation found that Havice "failed to show that a different conclusion would have been reached if the ALJ had specifically mentioned and considered chronic pain syndrome." [11], p. 9.

Havice timely objected to the Report and Recommendation arguing that the ALJ's error was not harmless and was not supported by substantial evidence because the ALJ failed "to acknowledge or discuss the diagnosis of chronic pain syndrome" at step two which impacted the ALJ's step three findings, as well as the ALJ's RFC analysis at step four. [12], pps. 3-4. Specifically, Havice argues that "even if the ALJ had explicitly considered chronic pain syndrome and found that it did not cause more than a minimal effect on Plaintiff's ability to work, he still would have been required to consider it in his RFC analysis." [12], p. 4. As a result, Havice submits that the ALJ's decision "offends the key steps of SSA's mandated five-step analysis" and asks this Court to remand this action for further proceedings. [12], pps. 3, 7, 11.

## II. STANDARD OF REVIEW

It is well-settled that "[p]arties filing objections must specifically identify those findings objected to." *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987) (alteration in original) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982)). The Court must review any objected-to portions of a report and recommendation de novo. Such a review means that the Court will consider the record that has been developed before the Magistrate Judge and make its own determination based on that record. *United States v. Raddatz*, 447 U.S. 667, 675, 100 S. Ct. 2406, 65 L. Ed. 2d 424 (1980). The Court need not consider frivolous, conclusive, or general objections. *Johansson v. King*, No. 5:14-cv-96-DCB, 2015 WL 5089782, at *2 (S.D. Miss. Aug. 27, 2015) (citing *Battle*, 834 F.2d at 421). Additionally, "[m]erely reurging the allegations in the petition" is not enough to receive de novo review. *Id*. Any unobjected to portions of a report and recommendation are reviewed for clear error. *See* FED. R. CIV. P. 72 advisory committee's note ("When no timely objection is filed, the [district] court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.").

The Court's "review of social security disability claims is exceedingly deferential and limited to two inquiries: whether substantial evidence supports the ALJ's decision, and whether the ALJ applied the proper legal standards when evaluating the evidence." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012) (citation omitted). "Substantial evidence" is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)). While more than a scintilla, substantial evidence is less than a preponderance. *Bowling v.*

*Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) (citing *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)). "It must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Harrell*, 862 F.2d at 475 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)) (internal quotations omitted). The Court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute the Court's judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling*, 36 F.3d at 434 (quoting *Harrell*, 862 F.2d at 475) (internal alteration omitted).

### III. DISCUSSION AND ANALYSIS

For purposes of this analysis, the Court assumes—without deciding—that the ALJ erred in failing to determine whether Havice's chronic pain syndrome was a separate impairment at step two.[4] *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) ("even if the ALJ made any error, the error would be harmless); *Garcia v. Astrue*, No. M-08-264, 2012 WL 13716, at * 12 (S.D. Tex. Jan. 3, 2012) ("assuming (without deciding) that the ALJ erred" and proceeding with a harmless error analysis); *Luzenia K. v. Saul*, No. 3:19-cv-1006-BT, 2020 WL 2574933, at * 5 (N.D. Tex. May 20, 2020); *see also Herrera v. Commissioner of Social Security*, 406 F. App'x 899, 903 n.2 (5th Cir. 2010). The question, then, is whether that error was harmless. *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021) ("if the ALJ proceeds past step two, we consider whether the error was harmless."). An

---

[4] As discussed above, at step two of the sequential analysis, an ALJ determines whether the claimant has a medically determinable impairment that is severe. A medically determinable impairment results from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Randall v. Astrue*, 570 F.3d 651, 657 (5th Cir. 2009). An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). An impairment is not severe "if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). Plaintiff bears the burden of proving that he suffered from a severe impairment. *Giles v. Astrue*, 433 F. App'x 241, 246 (5th Cir. 2011).

error is harmless unless there is reason to think that remand might lead to a different result. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). In other words, "[h]armless error exists when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err." *Keel*, 896 F.3d at 556.

Accordingly, "the general rule is that failure to specifically consider an impairment at step two may be harmless if the ALJ assesses limitations associated with that impairment (despite not mentioning it specifically)." *Jaynes v. Commissioner of Social Security*, No. 9:20-cv-161-CLS, 2021 WL 12310605, at *6 (E.D. Tex. Nov. 24, 2021); *Gibbons v. Colvin*, No. 3:12–cv–0427–BH, 2013 WL 1293902, at *16 (N.D. Tex. Mar. 30, 2013) (any error at step two in assessing the claimant's mental impairment was harmless). In light of this general rule, the Court must decide whether the ALJ assessed Havice's mental and physical limitations associated with his pain in calculating his RFC. An individual's RFC "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Social Security Regulation ("SSR") 96-8p, 1996 WL 374184, at *1, *3-5 (S.S.A. July 1, 1996). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including functions in paragraphs (b), (c), and (d) of 20 C.F.R. [§§] 404.1545 and 416.945." *Id*. at *1. Paragraphs (b), (c), and (d) relate to physical, mental, and other abilities.

When assessing mental impairments, the ALJ considers evidence of the claimant's abilities to understand, remember, and carry out instructions, as well as respond appropriately to supervision, co-workers, and pressures in a work setting. 20 C.F.R. § 404.1545(c). The ALJ uses the "paragraph B criteria" to rate the severity of a claimant's mental limitations in the following

functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 404.1520a(c)(3). Additionally, the ALJ considers limitations and restrictions that affect other work-related abilities. 20 C.F.R. § 404.1545(d).

When assessing physical impairments, the ALJ considers the nature and extent of the claimant's physical limitations and then determines the claimant's ability for work activity on a regular and continuing basis. 20 C.F.R. § 404.1545(b). The ALJ considers that a "limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce [claimant's] ability to do past work and other work." *Id.*

The RFC determination falls solely to the ALJ, who is responsible for resolving any conflicts in the evidence. *See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001). The ALJ is not required to expressly state in the RFC the limitations on which it is based. *Bordelon v. Astrue*, 281 F. App'x 418, 422-23 (5th Cir. 2008). Nor is an ALJ required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).

## A. Mental limitations

In his report, the ALJ found that Havice had a non-severe mental impairment of major depressive disorder. And, according to Havice, the ALJ erred when he excluded his non-severe mental impairments, which he claims were a symptom of his chronic pain, from the RFC without consideration or providing sufficient explanation for doing so. [12], pps. 2, 6, 8. Havice argues that

this error requires remand because "pain affects mental functioning such as mood and the ability to concentrate or focus on tasks," which the ALJ should have discussed in formulating his RFC. [12], p. 9. But the Court finds that the ALJ assessed the mental limitations associated with Havice's chronic pain in the RFC analysis and provided an explanation for excluding mental limitations from Havice's RFC. Thus, any error in failing to list Havice's chronic pain syndrome as an independent impairment at step two was harmless. *See Jones v. Kijakazi*, No. 4:23-cv-24-SRW, 2024 WL 324079, at *8 (E.D. Mo. Jan. 29, 2024) ("even if the ALJ technically erred in not explicitly including chronic pain syndrome in Step Two, given the ALJ's extensive inclusion and discussion of Plaintiff's pain in his subsequent analysis, the ALJ's failure to include them at Step Two was, at most, a harmless error.") (collecting cases).

Prior to determining Havice's RFC, the ALJ found that because of Havice's non-severe mental impairment of major depressive disorder, Havice had a "minimal limitation" in his "ability to perform mental work activities." [6], p. 20. And upon consideration of the "paragraph B" criteria, the ALJ explained Havice's mental impairments as follows:

> The first functional area is understanding, remembering or applying information. In this area, the claimant has no limitation. The next functional area is interacting with others. In this area, the claimant has no limitation. The third functional area is *concentrating*, persisting or maintaining pace. In this area, the claimant has *mild limitation*. The fourth functional area is adapting or managing oneself. In this area, the claimant has mild limitation.

[6], p. 28. Having found no limitations, or only mild limitations, in all four functional areas at step two, the ALJ concluded that Havice's mental limitations were non-severe. As a result, the ALJ concluded that Havice retained the RFC to perform sedentary work as defined in 20 CFR 404.1565(a)—which encompassed his past relevant work a Program Director. [6], p. 29. The ALJ did not include mental limitations in Havice's RFC. And Havice does not specifically identify any

error in the ALJ's finding as to his mental limitations. Rather, Havice argues that the ALJ erred in formulating his RFC because, despite finding non-severe mental limitations, the ALJ failed to assess the mental limitations associated with Havice's pain, and that the ALJ's failure to do so was not harmless.

It is well-settled that in evaluating a claimant's RFC, an ALJ must consider the limiting effects of all impairments, even those that are not severe. 20 C.F.R. §§ 404.1545(e), 416.945(e); *see also* Assessing Residual Functional Capacity in Initial Claims, SSR 96–8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996). This is because even non-severe limitations may combine with other severe impairments to prevent an individual from doing past relevant work or narrow the range of work that the individual can perform. SSR 96-8p, 1996 WL 374184, at *5; *see also Fraga v. Bowen*, 810 F.2d 1296, 1305 (5th Cir. 1987) ("The well-settled rule in this Circuit is that in making a determination as to disability, the ALJ must analyze both the disabling effect of each of the claimant's ailments and the combined effects of all these impairments.") (internal quotation and citation omitted).

Courts have routinely found no legal error where an ALJ does not include mental limitations in a claimant's RFC so long as the ALJ considered the limiting effects and restrictions of all impairments in the RFC analysis, even those impairments that are non-severe. *Hernandez v. Commissioner of Social Security*, --- F. Supp. 3d ----, 2024 WL 4126699, at *3 (W.D. Tex. 2024); *Claudio v. Commissioner of Social Security*, No. 4:23-cv-108-BP, 2023 WL 4748218, at *4 (N.D. Tex. Jul. 25, 2023) (courts have "found no legal error where an ALJ did not include mental limitations in a claimant's RFC so long as the ALJ considered the limiting effects and restrictions of all impairments in the RFC analysis, even non-severe impairments."); *Gonzales v. Colvin*, No. 3:15-cv-

685, 2016 WL 107843, at *6, *8 (N.D. Tex. Jan. 11, 2016) (holding that "the ALJ adequately discussed and considered the limiting effects of [plaintiff's] mental impairments in formulating his RFC" when the ALJ's RFC analysis considered relevant mental health records, reports, and plaintiff's testimony regarding his mental impairments); *Danny R. C. v. Berryhill*, No. 3:17-cv-1682, 2018 WL 4409795, at *15-16 (N.D. Tex. Sep. 17, 2018) (finding no legal error where the ALJ declined to include mental limitations in plaintiff's RFC because the ALJ's "decision reflect[ed] that he considered Plaintiff's mental functioning when performing his RFC analysis."). Here, the ALJ adequately considered the limiting effects of Havice's mental limitations associated with his pain by assessing Havice's hearing testimony and his medical records.

For example, in completing the RFC analysis, the ALJ considered Havice's hearing testimony that he "left his most recent employment due to an inability to complete tasks secondary to a combination of physical and mental limitations, including pain and side effects of medication." [6], p. 22. Additionally, the ALJ recounted Havice's testimony that he "is on medication for depression. He is depressed one or two days per week." [6], p. 23.

The ALJ also "fully considered the medical opinions and prior administrative medical findings" in formulating Havice's RFC. *Id*. at p. 28. The ALJ reviewed Havice's January of 2022 visit with his primary care provider for "fatigue, back pain, hip pain, and shoulder pain." *Id*. at p. 24. There, Havice "rated his pain as a 4 of 10" and expressed his interest in "psychotherapy for stress minimally improved on Duloxetine." *Id*. At that appointment, his "Duloxetine was increased for depression." *Id*. p. 24. The ALJ also noted that in February of 2022, Havice "reported to primary care that his Duloxetine was improving his pain and depression to some extent." [6], p. 25.

11

Additionally, the ALJ considered Havice's psychological examination in December of 2022, which revealed that while Havice's mental health limitations were secondary to chronic pain, such limitations caused "no more than minimal impairment." [6], p. 68. The ALJ found this to be persuasive because Havice "did not give psychological reasons for inability to work. Rather, he mainly described physical problems." *Id*. at p. 25. The ALJ also noted that Havice "was not involved in mental health treatment." *Id*. As a result, the ALJ determined that this examination "supported the finding that claimant has no work-related restrictions secondary to depression." *Id*. at p. 25. After analyzing Havice's medical records and hearing testimony, and in comparing Havice's RFC "with the physical and mental demands" of his prior job as a program director, the ALJ found that Havice could perform past relevant work.

In his Objection, Havice "agrees that his psychological problems are not the 'main reason' he is disabled." [12], p. 8. But Havice argues the ALJ's reliance Dr. Stoudenmire's statement that Havice did "not give psychological reasons as to why his is not able to work," proves that the ALJ failed "to acknowledge or discuss Plaintiff's diagnosis of chronic pain syndrome, and its well supported attendant symptoms that include mental impairments." [12], p. 8. In support of his argument, Havice relies on a number of cases, including *Castillo v. Kijakazi*, 599 F. Supp. 3d 483, 490 (W.D. Tex. 2022) and *Martha L. v. Saul*, No. 1:20-cv-3-H-BU, 2021 WL 3610316 (N.D. Tex. Jul. 27, 2021).

In *Castillo v. Kijakazi*, the ALJ's discussion of the evidence of mental impairments was comprised of only "two sentences" summarily concluding the claimant had normal mental status examinations and can generally perform activities of daily living. *Castillo v. Kijakazi*, 599 F. Supp. 3d at 487. And in *Martha L. v. Saul*, the ALJ's RFC analysis discussed the physical limitations, but

"is silent as to Plaintiff's mental limitations and mental functioning." *Martha L.*, 2021 WL 3610316 at \*5.

In this case, however, the ALJ engaged in a thorough discussion of Havice's mental limitations and the medical evidence in calculating Havice's RFC. Indeed, the ALJ found two state agency psychological consultants' opinions regarding Havice's mental limitations—that Havice "has no limitation to understanding, remembering, and applying information; no limitation to interacting with others; mild limitations to concentrating, persisting, and maintain pace; and no limitation to adapting or managing himself"—as persuasive and "well supported and consistent with the medical evidence of record." [6], p. 28. He also found statements from Havice's primary care provider persuasive and consistent with medical evidence. [6], p. 29.

In continuing the ALJ's thorough analysis, he also rejected the opinions of two state agency medical consultants that Havice is "restricted to less than the full range of sedentary work" as unpersuasive and "poorly supported and inconsistent with the medical evidence of record." [6], p. 28. The ALJ also rejected the psychological consultative examiner's opinion that Havice could "perform routine, repetitive tasks without major difficulty so long as the exertion does not bring on acute levels of pain," as unpersuasive and "poorly supported and inconsistent with the medical evidence of record," particularly to Havice's "reported positive response to Duloxetine at primary care in the context of negative PHQ2 [depression screen] scores." [6], pps. 28-29. Finally, the ALJ found third-party statements from Havice's wife to be unpersuasive.

Thus, unlike the ALJ in *Castillo* and *Martha L.*, the ALJ in the instant case adequately considered the limiting effects of Havice's mental limitations associated with his pain—including his alleged inability to concentrate as a result of his chronic pain. And it is well-settled that "the

ALJ is not always required to do an exhaustive point-by-point discussion" of each piece of evidence at every step. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). Further, "[t]he fact that the ALJ cited certain evidence that he felt supported his decision does not mean that he failed to consider all of the other evidence in the record." *Brunson v. Astrue*, 387 F. App'x 459, 461 (5th Cir. 2010). To the contrary, the ALJ states he "has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p." [6], p. 22. This Court finds "no reason or evidence to dispute his assertion." *Brunson*, 387 F. App'x at 461.

In fact, not only does the record support the ALJ's finding that Havice's mental limitations were non-severe, but it is also clear from the record that the inclusion of Havice's chronic pain as a separate impairment would not have led to greater RFC limitations. To be sure, nowhere in Havice's medical records does he provide any psychological reasons detailing his inability to work. [6], pps. 25, 28-29. Indeed, Havice's medical records reflect that he can perform personal care tasks, has no major difficulties with domestic work, manages his finances, medications, and medical appointments, in addition to driving. *Id*. at p. 20. His medical records also indicate that he was not involved in mental health treatment. *Id*. Consistent with Havice's descriptions of daily life, a state agency psychological consultant assessed Havice's RFC and ultimately determined that he had no limitations with understanding, remembering, applying information, interacting with others, or managing oneself. [6], pps. 20, 68. That assessment also revealed that Havice only had mild limitations with concentration, persistence, and maintaining pace. [6], p. 68.

Despite his arguments to the contrary, Havice has not identified how the ALJ's designation of chronic pain as a separate impairment at step two would have altered the ALJ's detailed

assessment of his mental limitations, or his conclusion that Havice's mental limitations were non-severe. In other words, Havice does not show that his RFC would have included mental limitations sufficient to support a disability finding but for the ALJ's error.

Because the ALJ accounted for Havice's lack of focus, which Havice argues was a symptom of his chronic pain, in calculating his RFC, "it is inconceivable that the ALJ would have reached a different conclusion on this record, even had the ALJ" separately addressed Havice's chronic pain as a separate impairment at step two. *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (per curiam). Therefore, any error on behalf of the ALJ in failing to address Havice's chronic pain as an independent impairment was harmless. *Keel*, 986 F.3d at 556. Remand is not warranted on this ground, as there is no reason that a remand would lead to a different result. *Mays*, 837 F.2d at 1364.

## B. Physical limitations

The vast majority of Havice's Objection focuses on the mental impairments considered by the ALJ, and it is unclear whether Havice actually objects to the Report and Recommendation's finding as to the ALJ's consideration of his physical limitations. *See* [12], p. 7 (arguing that even if it is inconceivable that a different conclusion would have been reached if the ALJ had not erred as to his "physical restrictions caused by his pain (i.e., sitting, standing, lifting) . . . there is no dispute that the ALJ did not appropriately consider the mental effects of Plaintiff's pain/chronic pain syndrome in this case."). But out of an abundance of caution, the Court will briefly discuss the ALJ's assessment of Havice's physical limitations associated with his reports of pain.

The ALJ found that Havice had severe impairments of dysfunction of the bilateral shoulders; status post bilateral hip replacements; degenerative disc disease of the lumbar, thoracic, and cervical spine; aortic insufficiency due to bicuspid valve; and obesity. Other non-severe

impairments included cystitis, obstructive sleep apnea, and major depressive disorder. Although the ALJ did not list chronic pain syndrome as an independent impairment at step two, his report indicates that he "considered the claimant's back pain, hip, and shoulder pain in the context of obesity." [6], p. 24. To be sure, when determining Havice's RFC, the ALJ mentioned Havice's pain at least 40 times, considered Havice's hearing testimony regarding his pain, and conducted a detailed review of his medical history. [6], pps. 22-29.

For example, the ALJ considered Havice's testimony that he "left his most recent employment due to an inability to complete tasks secondary to a combination of physical and mental limitations, including pain and side effects of medication." [6], p. 22. And that "his physical functioning varies on a daily basis. On some days, he will have exacerbated neck pain. On other days, he will have exacerbated lower back pain. His low back pain limits his ability to walk." *Id*. He also considered Havice's testimony that "[h]e cannot lift his arms over his head due to pain," that he "has to shift position between sitting and standing to minimize pain" every 10 or 15 minutes, and that Havice "described limited functioning secondary to pain and dizziness from Gabapentin." *Id*. at p. 23.

The ALJ also thoroughly reviewed Havice's medical history, including his January 2022 treatment for "fatigue, back pain, hip pain, and shoulder pain," which had reportedly improved by February of 2022. [6], pps. 24-25. The ALJ considered Havice's pain related to his left hip replacement, which Havice reported as "well controlled" as of April 14, 2022. *Id*. at p. 25. He also considered Havice's neck and low back pain as of April 2023. *Id*. at p. 26. In the ALJ's decision, he explained that he had "accounted for the above treatment for neck and back disorder with the restriction to less than the full range of sedentary work as described in the residual functional

capacity." *Id.* at p. 27. He also explained that he "accounted for the claimant's continued care for bilateral hip disorder with the restriction to sedentary work as described in the residual functional capacity." *Id.* Finally, the ALJ considered Havice's evaluation by pain management in October of 2023 and that Havice had rated his pain as "a 7 of 10." *Id.* Upon consideration of Havice's physical exam, the ALJ decided that the "findings from the above pain management visit do not support the need for greater restrictions than those described in the residual functional capacity." *Id.*[5]

As evidenced by the report, the ALJ properly accounted for the physical limitations caused by Havice's chronic pain and considered the objective medical evidence from acceptable medical sources. And because Havice has not shown that "a different administrative conclusion would have been reached" if the ALJ had not erred, any error on behalf of the ALJ in failing to separately address Havice's chronic pain as a separate impairment was harmless. *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021); *see also Reliford v. Colvin*, No. H–12–1850, 2013 WL 1787650, at *13 (S.D. Tex. Apr. 25, 2013) ("even if the ALJ's failure to make a specific severity finding with regard to foot pain was an error, it was harmless because he considered related limitations at subsequent steps of the disability analysis"); *Garcia v. Astrue*, No. M–08–264, 2012 WL 13716 (S.D. Tex. Jan. 3, 2012) (even if the ALJ erred at step two in failing to address the severity of the claimant's right leg venous thrombosis, that error was harmless because the ALJ considered all the claimant's limitations in determining his RFC, and decided the case at step five). Accordingly, remand is not warranted on this ground.

---

[5] As discussed above, the ALJ found that Havice has the "residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can rarely climb ladders, ropes, and scaffolds. He can occasionally climb ramps or stairs. He can occasionally balance, stoop, crouch, kneel, and crawl. He can rarely use both hands and arms for overhead reaching." [6], p. 22.

**IV. CONCLUSION**

IT IS THEREFORE ORDERED AND ADJUDGED that United Magistrate Judge Michael T. Parker's Report and Recommendation [11] is ADOPTED as the opinion of this Court.

IT IS FURTHER ORDERED AND ADJUDGED that Edward Alan Havice's Objection [12] to the Report and Recommendation is OVERRULED.

IT IS FURTHER ORDERED AND ADJUDGED that this case is closed. A separate final judgment will be entered.

This, the 31st day of March, 2025.

TAYLOR B. McNEEL
UNITED STATES DISTRICT JUDGE